The Iowa Lumber Co. v. Foster.

## THE IOWA LUMBER CO. v. FOSTER ET AL.

1. **Corporations:** PURCHASE OF THEIR OWN STOCK: CONTRACT. A corporation organized under the general law of this State, and which was authorized by its articles of incorporation to "purchase and hold, sell or exchange, any real estate or other property deemed desirable in the transaction of its business," was *held* to have power to make a valid and binding contract for the purchase of shares of its own stock.

2. **Practice in the Supreme Court:** PLEADING. A party cannot raise, for the first time, in the Supreme Court, an objection to the decree in the court below upon the ground that the relief granted thereby was not prayed for in the pleadings..

*Appeal from Dubuque Circuit Court:*

THURSDAY, JUNE 13.

ACTION in equity, the object being to obtain an accounting from the defendant Foster, and the recovery against him of a judgment for an amount claimed to be due the plaintiff, and also to have certain notes or drafts executed by the plaintiff delivered up and cancelled, on the ground that they had been paid.

The defendants Palmer & Johnson claimed to be the owners of said notes, and denied that the same had been paid, and they asked judgment for the amount due thereon against the plaintiff.

Foster denied being indebted to the plaintiff, and, by way of counter-claim, alleged that he took and paid for stock in the plaintiff to the amount of ten thousand dollars, under the agreement that plaintiff would purchase and take from him said stock upon certain conditions, or if certain events trans-

pired in the future, and which events, it was alleged, had occurred. There was a trial to the court, finding for the defendants, and plaintiff appeals.

*Robinson & Lacey,* and *H. B. Fouke,* for appellant.

*Pollock & Shields,* for appellees.

SEEVERS, J.—I. It is conceded by counsel for appellant that this cause is not triable *de novo* in this court. It, therefore, follows that the judgment below can only be reviewed on exceptions duly taken, and errors properly assigned. There was a finding of facts made by the court, which was duly excepted to. But such finding stands as the verdict of a jury, and cannot be disturbed if the evidence is conflicting, or there is testimony upon which such finding can be reasonably sustained. Upon this branch of the case we are relieved of any difficulty, because counsel for appellant do not complain of the findings of fact in the court below, nor urge "that the preponderance of the testimony is adverse to such findings."

The only questions, then, for consideration are whether or not the court erred in applying the law to the facts found, for no other errors are assigned.

II. It is assigned as error that the court erred in finding there was any valid contract to take back Foster's stock, and for rendering judgment for him for the amount found due for said stock. It will be observed that the first portion of this assignment is more in the nature of a complaint that the finding of facts in reference to the stock is not sustained by the testimony, than that there has been any erroneous ruling as to the law. It is the judgment rendered on the facts only we need discuss, in view of the concessions of counsel before referred to.

The ultimate fact found by the court on this branch of the case is as follows: "On the counter-claim and cross-demand of said Foster against said company for the claim of value of his one hundred shares of stock upon the original agreement.

to take said stock of him, and pay him back the value of said stock and its earnings, I can come to no other conclusion than that there was such an agreement." The court then proceeds to group together the evidence, or refers to the testimony on which he founds his conclusion, but this cannot be said to be any portion of the facts found, nor would it change the result, unless we could look at the testimony and therefrom conclude differently. Taking it for granted that the finding of fact is sufficiently supported by the evidence, the judgment is undoubtedly correct, unless the contract or agreement was *ultra vires,* and to that question we turn our attention. In Green's Brice's Ultra Vires, 98, it is said in the text that "corporations cannot, whatever the nature of their business, without express and very clear power in that behalf, deal in their own shares." In a note by the American editor, on page 99, it is said : "American authorities hold that there is at common law nothing to prevent a corporation from taking its own stock in payment or satisfaction of debts, and some even hold that at common law a corporation may purchase its own stock, provided the transaction is *bona fide,* and not in fraud of creditors." In support of this doctrine the following cases are cited : *Barton v. P., J. & U. F. Plank-road Co.,* 17 Barb., 397 ; *Cooper v. Frederick,* 9 Ala. ; *Verplanck v. Mer. Ins. Co.,* 1 Edw. Ch., 84 ; *Hartridge v. Rockwell,* R. M. Charlton, 260 ; *Gillett v. Moody,* 3 Coms., 479 ; *Taylor v. Miami Exporting Co.,* 6 Ohio, 176 ; *State Bank v. Fox,* 3 Blatch., 431 ; *Bank of Columbus v. Bruce,* 17 N. Y., 507.

1. CORPORA-TIONS : pur-chase of their own stock : contract.

We do not deem it necessary to ascertain and determine what the true rule is when the charter accurately defines and limits the objects of the corporation, as the powers of the corporation in question, without serious doubt, we think, are sufficient to cover and include the act in question. In this State, persons desiring to form a corporation do so under a general law, and may assume such powers, and define and limit the extent thereof in such manner, as is deemed advisable,

provided such powers and privileges do not exceed those possessed by natural persons. Code, § 1058.

The articles of incorporation provide as follows: "The general and principal business shall be the manufacture and dealing in lumber, lath, shingles, and other articles as the company may from time to time direct. The company may acquire and transfer, purchase and hold, sell or exchange any real estate *or other property* that may be deemed desirable in the transaction of its business." It must be presumed the word "property" was understandingly used, and with reference to the meaning attached thereto in the statutes of this State. "Property" includes personal and real property, and "personal property" includes money, goods, chattels, evidences of debt, and things in action. Code, § 44, subdivisions 9 and 10.

The provisions of the charter in question are much broader and more comprehensive than those contained in the charter of the banking company, in reference to which the decision was made on which the doctrine in the text in Green's Brice's Ultra Vires is based, before referred to. Express power is given the plaintiff to buy or sell any and all kinds and species of property which may be deemed advisable and for the best interests of the corporation by the officers thereof.

Under this power a contract was made to purchase the defendant Foster's stock. There is no pretense of fraud or bad faith in the transaction; nor, so far as shown, are the rights of creditors injuriously affected. The only objection urged is the want of power. That is to say, the contract was made in good faith, but the power to do so did not exist. This objection cannot be permitted to prevail. After assuming the powers above specified it does not lie in the mouth of these corporators to raise or insist on this objection.

II. The court found there was a certain amount due Palmer & Johnson, and rendered judgment therefor. The plaintiff claimed this indebtedness had been paid, and the court found it had not.

There was evidence in support of the finding, and we cannot interfere therewith.

III. The court found that Foster was entitled to interest on money furnished or advanced by him for the plaintiff. The only reasonable meaning to be attached to this finding is, that Foster should be allowed interest on all advances made over and above the several amounts received by him. Foster had credited himself with one thousand two hundred and twenty-five dollars and ninety cents, as interest due him. He was allowed in the decree seven hundred and ten dollars and thirty cents, making in all one thousand nine hundred and thirty-six dollars and twenty cents. There is no conflict in the testimony on this subject. It is strictly a matter of computation.

As careful an examination of the matter as we have been able to give satisfies us that Foster is not entitled to both these sums, and that the amount found due by the court is about correct. The appellant, however, in a calculation furnished us, makes the amount seven hundred and ninety-four dollars and seventy-six cents, and we adopt that as the true amount. This will leave Foster due the plaintiff, on interest, four hundred and thirty-one dollars and fourteen cents.

The decree fixes the amount due from Foster to the plaintiff, for money appropriated to his use, at three thousand five hundred and ninety-two dollars and eighty-seven cents. To this must be added the amount found due as interest aforesaid, making the sum of four thousand and twenty-four dollars and one cent, with interest thereon. With this modification the judgment below will be affirmed, and a decree may be entered in this court, or the cause will be remanded, with directions to enter a decree in the court below in accordance with this opinion. Appellant is entitled to costs in this court.

MODIFIED AND AFFIRMED.

ADAMS, J., having been counsel, took no part in this decision.

The Iowa Lumber Co. v. Foster.

BECK, J.—Upon the petition of plaintiff a rehearing was allowed in this case. It has been again submitted upon the petition for rehearing, which stands for the argument of plaintiff. We have not been favored with an argument by counsel for defendant upon the re-submission. We will proceed to notice the points made by the petition for rehearing.

Counsel concede the cause is not triable *de novo*. In view of the numerous decisions of this court on that question he could not have claimed otherwise. If this concession had not been made the ruling would have been the same. The main point is, whether the court found as a fact that there was an agreement or contract to take from Foster his stock. It is insisted the court intended by the use of the term "original agreement," to find only that there was such an agreement among, at least, some of the stockholders preceding the organization of the company. The evidence tends strongly to show there was such an agreement between all the persons who afterward became stockholders, except Mr. Scofield. Whether this was the contract referred to by the court, to say the least, is doubtful. But let this be conceded. The corporation was formed in September, 1872. Foster testified that Handy desired him to raise money for the company. Before doing so he wanted the contract as to the stock ratified by the company; that is to say, he desired the company to agree to do what was agreed upon before the organization. Whereupon Merrill, the president of the company, wrote him as follows:

"BLACK RIVER FALLS, Oct. 1, 1872.
"*H. B. Foster, Dubuque, Iowa.*

"DEAR SIR:—You inquire of me how I understand it in case the Iowa Lumber Company should conclude after a time to substitute some other person in your place for secretary and treasurer. I understand in that event, unless it was for some act such as embezzlement or some such act, you would

The Iowa Lumber Co. v. Foster.

be entitled to receive your capital stock after sharing in profits or loss.

"Very truly yours,

"L. G. MERRILL,

"President Iowa Lumber Company."

It is not for us to say what we would have found as an original question, but we are constrained to believe the court below could well have found this letter constituted a contract ·on the part of the company. It is certainly evidence tending to establish that conclusion, and we cannot say there was no evidence on which it may be based, and the court was governed by passion or prejudice and not by the evidence. The authority of Merrill to make such a contract is ample. The articles of incorporation and by-laws vested in him the supreme and absolute control of the company. ·What he did must be held to be the act of the company—at least the court below was justified in so finding. We have thus referred to some of the testimony because it is now urged that there was absolutely no evidence on which the finding can be sustained.

This case is to be tried here upon exceptions duly taken 2. PRACTICE in the supreme court. and errors properly assigned. It is insisted that the rule of damages adopted by the court below is incorrect, and that there is a variance between the finding of the court and cross-petition. If the exceptions taken and assignment of errors are carefully examined it will be seen that these matters are not included in either. While the exceptions are in form to the findings of facts, yet they are alone directed to the conclusions of law. This point is expressly made by the appellees. No allusion was, therefore, made in the opinion to such matters. Nor is there an exception to the effect that the court erred in the rule of damages adopted, or that the finding was not warranted by the pleadings. If the latter had been made in the court below the pleading could have been amended, on a proper showing, after the trial.

The Circuit Court found that there was a valid agreement between the plaintiff and Foster, by which plaintiff was bound to take the stock of defendant and pay him its value and its earnings.

Counsel make the point in the reargument that, as the possession and control of the stock had never passed to plaintiff, defendant is entitled to recover, for the breach of this agreement, the difference between the contract price and the value of the stock when the contract was broken. By the decree of the Circuit Court defendant recovers the value of the stock with its earnings. This counsel claim is erroneous, and base an objection thereon.

We will consider another objection urged by counsel, the answer to which will afford a complete refutation of their position upon this point of the case. It is this: The defendant Foster is not entitled to a specific performance of the agreement of plaintiff to take the stock, for the reason that he makes no allegations in his petition to support his rights to such relief, and prays for no such relief. The prayer for relief of Foster's cross-bill is not set out in the abstract; we are not, therefore, advised whether counsel's statements be correct. But Foster does allege that he has tendered his stock to plaintiff, and offers in an amended petition to make transfer thereof. The Circuit Court found that Foster had the right to enforce the agreement by returning the stock and recovering the value thereof, as provided in the decree. There was ground for this relief in the testimony. Foster bought the stock upon an agreement that he should be treasurer of the company, and if he was not continued in the office the stock should be bought back by plaintiff. It is clear that he is entitled to the relief of the specific enforcement of the contract to purchase the stock, in order that equity may be done. He would have full and complete relief in no other way. No objection to this relief was made in the court below, on the ground now urged in this court by the counsel for plaintiff. Surely we cannot deprive Foster of

the relief to which the finding of the court below, based upon the testimony, shows him to be entitled, on the ground, first urged in this court, that no prayer for such relief is found in the abstract. It may be observed that the abstract does not show that no such prayer for relief was made by Foster; it is simply silent upon this point. Had timely objection been made in the court below, Foster could have amended his cross-bill. Plaintiff had opportunity to raise the objection now urged by him before the trial, at the trial upon objection to evidence, and, finally, by exceptions to the findings of the court, and objections to the decree.

We thus see that Foster, upon the case presented by the findings of the court and the evidence, is entitled to the specific performance on the part of the plaintiff of its contract to purchase the stock at its value. The enforcement of this right is provided for in the decree, which renders judgment against plaintiff, to be enforced upon Foster transfering the stock as contemplated by the contract. The amount of the judgment, the measure of damages, should of course be, as it is, the value of the stock with its earnings. This conclusion disposes of counsel's objection founded upon the measure of damages allowed Foster by the judgment.

The conclusion we reached in the former opinion is adhered to, and the decree of the Circuit Court will be, as therein directed,

MODIFIED AND AFFIRMED.