NULTON v. CLAYTON.

54 425
96 151

54 425
143 20

1. **Corporation:** SUBSCRIPTION TO STOCK: CONTRACT. A statement, subscribed by the defendant and others. was in the following words: "We, the undersigned, having associated ourselves together for the purpose of organizing a banking association, and transacting the business of banking, under chapter 52 of the Revision of 1860, do declare and state as follows: * * * . *Third.* The name and residence of the shareholders of this association, with the number of shares held by each, are as follows." The association became incorporated under the general laws of the state: *Held* that the above statement constituted a subscription to the capital stock of the corporation, and bound the subscribers to pay for the number of shares set opposite their names, in the manner fixed by the articles of incorporation.

*Appeal from Davis District Court.*

TUESDAY, OCTOBER 5.

ACTION to recover upon an alleged subscription to the stock of a banking corporation. The question arises upon demurrer to the petition, the defendant claiming that the petition does not show that the defendant became a subscriber to the stock in such sense that he became obligated to take and pay for it. The corporation is the Farmers' & Merchants' Bank of Bloomfield. The plaintiff is the assignee of the corporation. The petition avers that the capital stock was divided into shares of one hundred dollars each, and that the defendant subscribed for ten shares. As constituting the subscription, the plaintiff sets out as an exhibit to his petition a certain written statement, and the articles of incorporation, both purporting to be subscribed by the defendant. The statement is in these words:

"We, the undersigned, having associated ourselves together for the purpose of organizing a banking association, and transacting the business of banking under chapter 52 of the Revision of 1860, do declare and state as follows:

"*First.* The name and title of the association shall be The Farmers' & Merchants' Bank of Bloomfield, Iowa.

"*Second.* The authorized capital of said Farmers' & Merchants' Bank of Bloomfield, Iowa, shall be one hundred and fifty thousand dollars, which shall be divided into shares of one hundred dollars each.

*Third.* The name and residence of the shareholders of this association, with the number of shares held by each, are as follows:

"J. W. Clayton,.........................10 shares."

The essential part of the articles of incorporation is in these words:

"*Eighth.* Fifty per cent of all the stock subscribed for this association before it commences business shall be paid in at the time of commencing business, and the balance so subscribed shall be paid in at such times, and in such installments, as the board of directors may prescribe."

The petition avers that the directors have called for full payment of all the stock subscribed.

To the petition so showing the defendant demurred. The court sustained the demurrer. Judgment having been rendered for the defendant, the plaintiff appeals.

*Trimble, Carruthers & Trimble,* for appellant.

*Traverse, Payne & Eichelberger,* for appellee.

ADAMS, CH. J.—The action is brought to recover one-half of the amount of the alleged subscription, the other half having already been paid. The defendant insists that it is not shown that he contracted to pay any sum whatever. The defendant did not become a stockholder by subscribing the articles of incorporation. If he became such he did so by subscribing what we have denominated the statement. The more important portion of it is the third division. That is a declaration purporting to be made by the associated persons showing each his respective interest in the corporation. Is it a subscription to stock? If

1. CORPORATION : subscription to stock : contract.

so, the defendant is liable to pay for the number of shares set opposite his name, without a promise to do so in so many words. This has been held repeatedly.

In *Spears v. Crawford*, 14 Wend., 20, the writing subscribed was in these words:

"We the subscribers do hereby severally agree to take the shares by us subscribed in the Harlem Canal Company." A certain number of shares was set opposite the name of each subscriber. The question presented was whether the mere agreement to take shares rendered the defendant liable to pay for them. The court held that it did.

In *Hartford & New Haven R. R. Co. v. Kennedy*, 12 Conn., 500, the word "subscriber" was used in what was claimed to be the subscription to stock. It was held that the subscriber was liable to pay for the stock, without a promise to do so in so many words. The court said: "It is true a promise to pay in precise terms does not appear to have been made. The defendant has not affixed his signature to an instrument which contains the words: "I promise to pay," but he has done an equivalent act. He has contracted with the plaintiff to become a member of the corporation, and to be interested in its stock."

In *Rensellaer & W. Plank Road Co. v. Barton*, 16 N. Y., 460, the court said: "Whatever may be the form or language of a subscription to the stock of an incorporated company, any person who in any manner becomes a subscriber for, or engages to take any portion of, the stock of such company, thereby assumes to pay according to the conditions of the charter." See, also, *Small v. Herkimer Manufacturing and Hydraulic Co.*, 2 Comst., 335; *Dayton v. Borst*, 31 N. Y., 437; *Hartford & New Haven R. R. Co. v. Crowell*, 5 Hill, 384; *Waukon & Mississippi R. R. Co. v. Dwyer*, 49 Iowa, 121.

Probably the defendant would not deny that where there is a valid subscription to stock, or written agreement to take stock, there arises upon such subscription or agreement an

Nulton v. Clayton.

obligation to pay for it. But the defendant insists that the writing in this case, whatever it may be called, falls short of being a subscription to stock, or agreement to take stock.

It declares that "the number of shares held by each are as follows:" Then follow names and amounts. The averment of the petition in substance is that the defendant by this contract subscribed for ten shares. By this we understand that the writing was signed by the defendant. The association purports to be incorporated under the general incorporation law. What purpose such a written declaration by the associated persons could have, if they were not thereby to become subscribers, each for the amount set opposite his name, we are unable to conceive. It is suggested that the written declaration was perhaps designed as a written admission of a previous subscription; but we see no reason for a formal written admission of what must have been already in writing, if there was a subscription to be admitted. It appears to us far more probable that the declaration was designed as a subscription. Now it matters not how informal the writing may be, if the intent of the parties can be collected from it. What the intent was in this case we have no reasonable doubt. The parties intended to adopt articles of incorporation, and become subscribers to the stock thereunder. If they did they became obligated to pay in accordance with the eighth article to which they made themselves parties.

Suppose a creditor of the association had brought an action upon his claim against the defendant, alleging that he is a partner. We think that the defendant might, and would, have set up the incorporation and sought shelter beneath it. There is no doubt that he in good faith attempted to become a member, and limit his liability by the exemption provided. If he could have escaped liability as a partner by setting up the incorporation and his membership, he cannot escape the limited liability incident to such membership.

We think that the demurrer was improperly sustained.

REVERSED.